## RICHARD C. ROUNSAVELL ET AL.
### v.
## ADELBERT B. CROFOOT.

1. TRUST DEEDS—POWERS—SETTING ASIDE SALE.—Powers of sale in deeds of trust are regarded with such jealousy that sales under them, if attacked before the rights of third persons have intervened, will be set aside if not conducted with complete fairness; and upon proof of the slightest fraud or unfair conduct, equity will interfere and give the grantor an opportunity to redeem.

2. AGREEMENT TO EXTEND TIME OF PAYMENT.—Where it is shown that there was an arrangement to extend the time of payment of the principal until notified that the holder of the note wanted it, a foreclosure without such notice is a fraud against which a court of equity will relieve. It is not essential that such arrangement should amount to an agreement, founded upon a sufficient consideration and capable of enforcement as such.

3. PAYMENT AT A PARTICULAR PLACE.—It appearing that former payments of interest had been made at C.'s office. instead of at the place of payment designated in the note, good faith on the part of the holder of the note required that he should have given some notice that he no longer intended to collect in that manner, before he presented the note and demanded payment at the place designated in the note.

4. NOTICE OF PUBLICATION—PROOF.—The answer not admitting the correctness of the copy of notice set out in the bill of complaint, and no witness testifying as to its contents, and it not being otherwise proved, the subject matter of the notice cannot be relied upon in support of the decree.

APPEAL from the Circuit Court of Cook county; the Hon.

E. S. WILLIAMS, Judge, presiding.   Opinion filed December 8, 1879.

Mr. W. W. FARWELL and Mr. A. T. EWING, for appellants; cited Bloom v. Rensselear, 15 Ill. 605; High on Injunctions, §§ 55, 102, 178, 196.

Mr. EDWIN F. BAYLEY and Mr. THOMAS D. JONES, for appellee; that no default sufficient to authorize the foreclosure had been made, cited Jones on Mortgages, § 1175; Williams v. Townsend, 31 N. Y. 411.

The notices of sale were informal and insufficient: Rev. Stat. Ch. 95, § 14; 2 Perry on Trusts, § 602.

The sales were vitiated by the fraud of appellants: Hall v. Cushman, 14 N. H. 171; Clarkson v. Creeley, 40 Mo. 114; Soule v. Ludlow, 3 Hun. 503; Burr v. Borden, 61 Ill. 389; Longwith v. Butler, 3 Gilm. 32; Weld v. Rees, 48 Ill. 428; Jenks v. Alexander, 11 Paige, 624; Montague v. Dawes, 14 Allen, 369; Mathison v. Prescott, 86 Ill. 493; Freeman on Judgments, § 492.

BAILEY, P. J.   This was a bill in chancery, filed in the Circuit Court of Cook county, by Adelbert B. Crofoot against Richard C. Rounsavell, Henry Weil and others, praying that certain sales of real estate under deeds of trust, and the trustee's deeds executed in pursuance thereof, be set aside and canceled, and that the complainant be permitted to redeem from said deeds of trust.   On the hearing in the court below, a decree was entered in accordance with the prayer of the bill, and from such decree said Rounsavell and Weil have appealed.

The facts, as shown by the record, are as follows: On the 5th day of October, 1874 one Sarah D. Winchester was the owner of the east eleven feet and one inch of lot six, and the west seven feet and eight inches of lot five, block twenty-three, in Wolcott's Addition to Chicago.   On that day she executed to one Wells, as trustee, a deed of trust, conveying the west seven feet and eight inches of said lot five to secure her note for $1,533.33, payable one year after date to the order of said

Rounsavell v. Crofoot.

Rounsavell, with interest at ten per cent. per annum, payable annually.   She thereupon erected on said premises a three-story and basement building, and on the 15th day of March, 1875, she executed another deed of trust, conveying the whole of said premises to one Goodrich, as trustee, to secure the payment of nine promissory notes, payable to the order of said Weil—one, a principal note, for $3,000, due four years after date, and eight notes for $150 each, payable at intervals of six months during said period of four years.

In each of said trust deeds there was a covenant that the grantor would in due season pay all taxes and assessments on the premises conveyed, and exhibit once a year on demand receipts of the proper persons, showing payment thereof.   In the power of sale, it was provided, among other things, that in case of default in the payment of the notes secured, or any part thereof, according to the tenor and effect of such notes, or in case of the breach of any of the covenants and agreements of the deed, then, on application of the legal holder of said notes, the trustee might advertise and sell said premises at public auction, and apply the proceeds to the payment of the notes, the costs of sale, etc.

At the time of the maturity of the Rounsavell note, the payment of the principal of said note was not insisted upon, but the note was allowed by Rounsavell to run along on payment of the interest; and this state of things continued up to the 23d day of September, 1878, the date of the first publication of the notices of sale under both of said deeds of trust.   This note, as it appears, was, sometime before its maturity, transferred to Weil; but Rounsavell, while it was in Weil's hands, acted as Weil's agent in relation thereto; and afterwards, and before the sale, the note was transferred back to Rounsavell. About four or five weeks before the maturity of the note, Mrs. Winchester, as she testifies, had a conversation with Rounsavell in relation to getting an extension of the time of payment, in which she told him that she would not be able to pay the principal, and asked for such extension.   He replied that the money was going to Weil, and all Weil wanted was his interest, and he would let her know when Weil wanted his princi-

pal. She further testifies that the same assurance was given her by Rounsavell at the time she afterwards paid the first year's interest. Rounsavell, in his testimony, denies making the promise to notify her when Weil wanted his principal, but admits that at about the time the first payment of interest became due, she came to him and wished to know if the principal must be paid up, telling him that she was not in a condition to pay it. He replied that he would write to Weil, and ascertain whether the latter would accept the interest without the principal, and that when an answer came he would tell her what Weil said. He wrote accordingly, and received an answer that Weil would accept the interest, and so notified Mrs. Winchester.

The testimony of Mrs. Winchester further shows that no demand was ever made upon her for the principal, and that she was never notified that payment of it was required. On the 20th day of March, 1877, Mrs. Winchester conveyed said property to Crofoot, subject to said deeds of trust. She testifies that at the time of such conveyance, she informed him of her arrangement with Rounsavell, in relation to allowing the principal to run until notice to the contrary. She also, at the same time, told Rounsavell of the conveyance, and informed him that if he would call at Crofoot's office, he, Crofoot, would pay the interest. On the 19th of November, 1877, Rounsavell called at Crofoot's office to collect the interest, in accordance with Mrs. Winchester's request, at which time Crofoot paid all the interest in arrears on both deeds of trust, including interest on interest for the time the same had been over-due. Crofoot swears that, at the time of making such payment, he explained to Rounsavell the circumstances of his obtaining the property, and stated to him his understanding that the time of payment could be and had been extended, and that all the holder of the note wanted was the interest, and that he, Crofoot, did not want to pay the interest for a year, and lose what he had put in. Rounsavell replied that he did not think it would be the best plan, and that all Mr. Weil, who held the deed of trust, wanted, was the interest. Rounsavell gives an entirely different account of this interview. He denies that

anything was said about extending the time of payment of either of the notes, and claims that he told Crofoot that Weil was very exacting, and that the interest and taxes must be promptly paid, or he would probably foreclose, as he had commenced doing once before.

On the 18th of March, 1878, Rounsavell called a second time at Crofoot's office, and received payment of the interest note of $150 falling due that day. Nothing was said at that time in relation to the $1,533.33 note, there being no interest then due on it. At the time of the first publication of the notices of sale by the respective trustees, no interest was in arrears on the $1,533.33 note, and the interest was all paid on the $3,000 note except the interest note of $150, which fell due September 18, 1878. Some of these payments, especially those made prior to the conveyance to Crofoot, were not made promptly, and considerable delay had occurred in the payment of taxes. On one occasion the property had been offered for sale for taxes and forfeited to the State for want of bidders, and in consequence thereof proceedings were commenced at the instance of Weil, for the foreclosure of the deeds of trust. Upon payment, however, by Mrs. Winchester, of arrears of interest and taxes and the costs then accrued, the proceedings were discontinued.

On the 6th of September, 1878, the portion of the premises covered by the deed of trust to Wells, was sold for the Lincoln Park assessment for 1877, amounting to $3.84; and judgment had been rendered against the whole property for the taxes of 1877, amounting to $188.23.

It appears that prior to August 17, 1878, at a time when no interest was in arrears on either trust deed, and while Crofoot and Mrs. Winchester were in no default, except in respect to taxes and the Lincoln Park assessment, a correspondence took place between Rounsavell and Weil, the latter then residing in New York, which resulted in a letter from Weil dated the day last named, by which Rounsavell and Goodrich, the trustee, were directed to foreclose the deed of trust securing his notes, if the taxes were not paid. On receipt of this letter, Rounsavell at once placed both deeds of trust in the hands of the

respective trustees, for the purpose of foreclosure. Some delay was occasioned by the temporary absence of Goodrich from the State, but the papers were handed to Goodrich's son, who was also Weil's attorney, and he prepared the notice and sent it to his father for his signature. The younger Goodrich testifies, that at the time of the former attempt to foreclose, Mrs. Winchester, on settling up and getting the proceedings withdrawn, requested him, in case Weil should institute further proceedings to foreclose, to notify her. Accordingly, when the papers were brought to him as before stated, he inquired of Rounsavell where Mrs. Winchester was, and received the reply that she had conveyed away her interest in the property and left the city. On this information, he forebore making any effort to comply with her request. The evidence shows that the statement that she had left the city was incorrect. The interest note which matured September 18, 1878, only five days before the publication of the notice, instead of being presented to Crofoot at his office, as had been done with the two preceding notes, was presented at the bank, where it by its terms was payable, and payment demanded there.

On the 26th day of October, 1878, in pursuance of the notice previously published, the premises covered by the respective deeds of trust were sold by the respective trustees, said Rounsavell bidding off in his own name the premises covered by the deed of trust to Wells for $1,733.10, and also bidding off in the name of Weil, and as his agent, the premises covered by the deed of trust to Goodrich for $3,175.75. Trustee's deeds were thereupon executed to the purchasers, the one being delivered directly to Rounsavell and the other to the younger Goodrich as the attorney of Weil.

It appears that both Crofoot and Mrs. Winchester were entirely ignorant of the proceedings to foreclose until some time after the sale. There is considerable evidence tending to show that the value of the premises is largely in excess of the amount for which they were sold.

As is said by the Supreme Court, in Burr et el. v. Borden et al., 61 Ill. 389, powers of sale in deeds of trust are regarded with such jealously by the courts, that sales under them, if

attacked in due season, and before the claims of third persons have intervened, will be set aside if not conducted with complete fairness. Upon proof of the slightest fraud or unfair conduct, equity will interfere and give the grantor or his assigns an opportunity to redeem. We think the facts shown by the record bring the case clearly within this rule. If the testimony of Mrs. Winchester and of Crofoot is to be believed, and we see no reason why the court below was not justified in crediting their testimony in preference to the unsupported testimony of Rounsavell, there was a definite arrangement between Rounsavell and both Mrs. Winchester and Crofoot, by which the principal of the $1,533.33 note was to be extended until they should be notified that the holder of the note wanted it. It is not essential that such an arrangement should amount to an agreement, founded upon a sufficient consideration, and capable of enforcement as such. By such arrangement, as well as by a long course of dealings in accordance therewith, the mortgagor and her grantee were lulled into security, and led to believe that no steps would be taken to foreclose until they should notified that the holder of the note chose to demand payment. To attempt to foreclose without such notice or demand was a fraud upon them against which a court of equity will relieve.

We also think that good faith required Rounsavell to present the notes at Crofoot's office for payment, and to relieve himself from that duty, he should have given Crofoot some notice that he no longer intended to collect in that manner. Mrs. Winchester, on conveying to Crofoot, requested Rounsavell to go to him for payment. While it is not shown that he in terms assented to that arrangement, it does not appear that he declined it. In compliance with the request, however, he called at Crofoot's office and collected there all the money which became due for the year following, and thus led Crofoot to suppose that the request would continue to be observed. On neither of the occasions when he called on Crofoot to collect the interest does he appear to have requested the payment of the taxes or assessments of which complaint is now made, or called the attention of Crofoot specifically to the same; he merely claims to have told Crofoot in a general way that the taxes must be promptly

paid, but on neither occasion when he called for money did he intimate that any taxes were delinquent. There is no pretense that Crofoot would not have been ready and willing to pay both interest and taxes if he had been requested to do so. The fact that the taxes were delinquent seems to have escaped his attention. Now, while it is true that Rounsavell was under no legal obligation to call on Crofoot to collect the notes, yet, so long as he had been requested to call there, and instead of declining had complied with the request, and by his conduct had given Crofoot the understanding that he would continue so to do, it was his duty to either call on Crofoot for the money, or inform him that such arrangement would no longer be observed.

The evidence furnishes very considerable foundation for the opinion that Rounsavell purposely managed the advertisement and sale of the property in such way as to keep Crofoot in ignorance of the proceedings, with a view to preventing a redemption by Crofoot and of perfecting a title to the property without his knowledge. The sale of the property was determined upon when no interest was due, and long before any sale of the property for taxes or assessments had taken place. When the trustee in one of the deeds of trust asked as to the whereabouts of the grantor, with a view to giving her personal notice of the sale, Rounsavell represented that she had left the city, a representation which turns out to be untrue. No notice was given that the holder of the $1,533.33 note had elected to call in his principal. When the interest note maturing September 18, 1878, became due, instead of presenting it at the office of Crofoot, where previous notes had been presented, and where Rounsavell had every reason to suppose it would be paid on presentation, he went through the barren formality of presenting it at the bank where it was made payable, and where he had every reason to suppose payment would not be made. His previous conduct and course of dealings were calculated to, and probably had, produced in the mind of Crofoot the impression that no steps would be taken to enforce the power of sale, at least until further notice to him. As a consequence, Crofoot was not expecting or looking for any adver-

Rounsavell v. Crofoot.

tisement of sale. Under these circumstances, good faith required Rounsavell, before proceeding to foreclose, to notify Crofoot of his intention so to do.

A further circumstance, tending to the same end, grows out of the subject-matter of the advertisements themselves. Papers alleged to be copies of these advertisements are appended to the bill as exhibits, and on examination of the same it is found that no claim is made therein of any default in the payment of taxes or assessments, but the default assigned in the advertisement under the Wells deed of trust is, the non-payment of the interest note which matured March 18, 1878, and which was in fact paid at maturity. Neither of the defaults set up in the notices existed in fact, as the interest note mentioned in one had been paid, and the principal of the other note, as we view the evidence, did not mature for the purposes of sale under the power, until notice or demand. Some question is made as to whether these notices of sale are properly identified and proved in the record. They appear as exhibits attached to the bill and are averred to be true copies. The notice published under the Wells trust deed is admitted by Rounsavell in his answer as being correctly set out in the bill, and is thereby sufficiently proved. No such admission as to the other notice is made in the answer of Weil, and no witness testifies to its contents, nor is it otherwise proved. The subject-matter of the last named notice, therefore, cannot be relied upon in support of the decree.

A point is made as to the sufficiency of the notices in view of the requirements of section 14, chapter 95, of the Revised Statutes. As we find sufficient ground for sustaining the decree in the facts and principles above discussed, we are not inclined to consider the sufficiency of the notices, nor to attempt to construe the statute in relation thereto.

As we find the decree sustained by the evidence, it will be affirmed.

Decree affirmed.